UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re VICTOR MONDELLI,<br><br>Debtor. | Civ. No. 12-4659 (WJM)<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

This matter comes before the Court on Debtor Victor Mondelli's appeal[1] of the Bankruptcy Court's March 20, 2012 Order which dismissed Debtor's Chapter 13 Petition in Bankruptcy Case No. 12-16514 as a bad faith filing[2] and sanctioned Debtor in the amount of $6,000. For the reasons set forth below, the decision of the Bankruptcy Court is **AFFIRMED**.

**I. BACKGROUND**

Before discussing the merits of Debtor's appeal, the Court notes the following: First, that the present appeal arises out of the same operative set of facts which have been extensively litigated before this Court, the Bankruptcy Court, the Third Circuit, and in New Jersey state court since Debtor first filed for bankruptcy on February 18, 2004 at Bankruptcy Case No. 04-15628 (the "Original Bankruptcy"). At the time of the Original

---

[1] Debtor has also appealed the Bankruptcy Court's order of May 9, 2012, which is separately docketed at Civ. No. 12-4658 (WJM). That appeal is subject to a concurrently issued Order to Show Cause.

[2] That order also dismissed Debtor's Petition based on the Bankruptcy Court's finding that Debtor's secured debt exceeded the statutory limit in Chapter 13 cases as set forth in 11 U.S.C. § 109(e). To the extent this served as an independent basis for dismissal, because ample evidence supports dismissal of Debtor's Chapter 13 Petition as being filed in bad faith, the Court will not address whether Debtor's adjudged failure to meet § 109(e)'s statutory debt limit served as an additional basis for dismissal. *See, e.g., In re Myers*, 491 F.3d 120, 125 (3d Cir. 2007) (affirming dismissal of Chapter 13 bankruptcy petition as a bad faith filing where bankruptcy court noted that debtor's failure to meet § 109(e)'s secured debt requirement was one of five factors that supported its finding that the filing was made in bad faith).

Bankruptcy, Debtor and his mother, Anna Mondelli, were the owners of commercial property located in Berkeley Heights, New Jersey[3] (the "Commercial Property").

In May 2007, the Bankruptcy Court approved a plan in the Original Bankruptcy (hereinafter, the "Plan") under which, among other things, Debtor would satisfy a significant portion of his outstanding debts by obtaining a loan from Jack Silverman Realty & Mortgage Co. ("JSRM").  *In re Mondelli*, 349 Fed.Appx. 731 (3d Cir. 2009). Although the Plan was atypical in some regards, for purposes of this Opinion, it is sufficient to note the Plan included a typical mortgage in which Debtor received a loan from JSRM, secured by the Commercial Property (the "Mortgage").  *Mondelli v. Berkley Realty Partners No. 244, LLC*, 08-CV-1582 (WJM), 2008 WL 3843268, at *1 (D.N.J. Aug. 14, 2008), *aff'd sub nom. In re Mondelli*, 349 Fed.Appx 731 (3d Cir. 2009).

After Debtor used the funds obtained from the Mortgage to pay various creditors, he sought to void the Plan by filing numerous, and ultimately unsuccessful, motions, appeals, and other applications with the Bankruptcy Court, this Court, and the Third Circuit Court of Appeals (the "Mondelli Litigation").  As a result of Debtor's pattern of vexatious litigation in his attempts to void the Plan, this Court took the exceptional step of imposing monetary sanctions on Debtor's attorney, Kenneth J. Rosellini, based on Mr. Rosellini's pattern of filing unmeritorious and frivolous motions and appeals on behalf of Debtor in the Mondelli Litigation.  *See In re Mondelli*, Civ. No. 10-3393-WJM, 2011 WL 1211433, at *8 (D.N.J. Mar. 19, 2011), *aff'd* at No. 11-3029, 2012 WL 6685476 (3d Cir. Dec. 26, 2012) ("Rosellini deserves to be sanctioned.  And some fees are warranted, as

---

[3] It appears that Debtor and his mother continue to retain an ownership interest in that property.

his legal work and the fact that this Court previously warned him against making arguments that lack legal merit suggest that he is not influenced by a court's words alone or by an order dismissing an appeal.").

Moreover, because Debtor was unsuccessful in his attempts to void the Plan, the Commercial Property remains subject to the terms of the Mortgage. Accordingly, after Debtor's defaulted on his Mortgage repayment obligations, a judgment of foreclosure on the Commercial Property was entered on September 6, 2011 in New Jersey Superior Court (the "Foreclosure Judgment"). As a result of the Foreclosure Judgment, the Commercial Property was scheduled to be sold via a Sheriff's sale on February 1, 2012, which was first adjourned to February 29, 2012, at the request of the Debtor.

On the eve of the rescheduled Sheriff's sale, February 28, 2012, Anna Mondelli – represented by Mr. Rosellini – filed a petition for Chapter 13 protection at Bankruptcy Case No. 12-14932-DHS, [4] which caused the Sheriff's sale to be stayed. On March 7, 2012 – just as he did in the order that is the subject of the current appeal – the Honorable Donald H. Steckroth, U.S.B.J., dismissed Ms. Mondelli's Chapter 13 Petition as being filed in bad faith.[5] That order caused the stay to be lifted and the Sheriff's sale to be rescheduled for March 14, 2012.

However, on the morning of March 14, 2012, Debtor – who for the first time throughout the Mondelli Litigation was represented by an attorney other than Mr.

---

[4] More precisely, and as noted by Judge Steckroth: "On February 28th 2012, Anna Mondelli, through a power of attorney, executed that day as I recall to Mr. Mondelli, filed a petition for Chapter 13 protection in this court." (Hr'g Tr. 29 Mar. 19, 2012.)

[5] And as he did in this case, Judge Steckroth also ruled that dismissal of Ms. Mondelli's Chapter 13 Petition was appropriate because the amount of secured debt exceeded the § 109(e) statutory limit for Chapter 13 cases.

3

Roselinni – filed a new petition for Chapter 13 protection at Bankruptcy Case No. 12-16514-DHS (the "March 14 Petition").  JSRM filed its motion to dismiss the March 14 Petition on that same day.  In their moving papers, JSRM also requested that the Bankruptcy Court sanction Debtor for making "another in a long chain of bad faith [filings]."  (JSRM's Mot. to Dismiss 13, B.R. No. 12-16514-DHS, ECF No. 3-2.)  On March 16, 2012, Marie-Ann Greenberg, Chapter 13 Standing Trustee, filed a similar request via letter asking the Bankruptcy Court to dismiss Debtor's petition and to "award fees pursuant to its broad authority under [11 U.S.C. §] 105(a)."  (Greenberg Letter, B.R. No. 12-16514-DHS, ECF No. 10.)

On March 19, 2012, Judge Steckroth held a hearing on the propriety of dismissal of the March 14 Petition.  At that hearing, Arthur Porter, Jr., counsel for JSRM, expressed a great deal of frustration with Debtor's actions since filing his Original Bankruptcy Petition, and most particularly with Debtor's recent actions causing multiple stays of a Sheriff's sale which he characterized as "toying with the Court."  (Hr'g Tr. 4 Mar. 19, 2012.)  Mr. Porter further indicated that "the games and the outrageous conduct of Mr. Mondelli and his attorneys" were costing JSRM $300 a day.  (*Id*. at 8-9.)  Mr. Porter advocated for the Bankruptcy Court to use its Section 105(a) inherent sanctioning authority to impose a $10,000 sanction against Mr. Rosellini, Debtor, and Joseph M. Rasa, the attorney who filed the March 14 Petition.  (*Id*. at 8.)  Mr. Porter succinctly summed up his frustration as follows:

> "It's time, Your Honor, and I know this is difficult, it's time Your Honor for sanctions to be issued.  For Mr. Mondelli to pay the price for coming into this court wasting your time, my client's time, my client's money, and this whole

4

court, so we can move forward, and wasting the Sheriff's time also, Judge." (*Id*. at 9.) Ms. Greenberg echoed that sentiment. (*Id*. at 22-24.) And although Judge Steckroth offered Mr. Rasa ample opportunity to refute the parties' assertions, ultimately, Judge Steckroth ruled that dismissal of the March 14 Petition as a bad faith filing was appropriate pursuant to *In re Lilley*, 91 F.3d 491 (3d. Cir. 1996). He also found that under the circumstances, imposing monetary sanctions against Debtor was appropriate. More precisely, Judge Steckroth made the following observations:

> "If one views the *Lilley* factors, the timing of the petition is a factor with bad faith filing. Well, it couldn't be [] more obvious [what the] purpose [was] for the filing. And it's not the first time. [Debtor] did a couple of weeks ago through his mother. It couldn't be more obvious. The debtor's motive in filing the petition. That's to stay the sale. Again. How the debtor's actions affected the creditors, it's delayed this creditor an extraordinary amount of time. The debtor's treatment of creditors both before and after the petition was filed. Well, this creditor has been treated both and after the petition and we can talk about the variety of petitions, in a way I think that's unfair and in just, you know, it gives the Bankruptcy Court and the Bankruptcy Code a bad name if we allow debtors to utilize it to effect rights that are guaranteed by law."
>
> . . . .
>
> "[T]he fundamental principle of Bankruptcy Code is rehabilitation, fresh start, and assistance to a debtor. But when it crosses a line to where the debtor is improperly utilizing the Code for his own personal advantage, it's abusive of the Code. It's just unfair and it's what bad faith filings are all about. I have no difficulty in all candor, finding this case to be a bad faith filing. I'm going to dismiss the case with prejudice because of [Debtor's] bad faith filing designed simply to affect this creditor's rights in the State Court [foreclosure action]."
>
> . . . .
>
> "[F]or those reasons, I'm going to dismiss the petition with prejudice. . . . And I'm going to assess attorney's fees, I'm going to assess a sanction against Mr. Mondelli, not [Joseph Rasa] today, but [Debtor] $5,000 payable to the creditors. . . . And another $1,000 which is what Ms. Greenberg's requested."

(Hr'g Tr. 35-38 Mar. 19, 2012.)

On the following day, March 20, 2013, the Bankruptcy Court entered an order formally dismissing the March 14 Petition and sanctioning Debtor $6,000. Debtor thereafter commenced the present appeal and is once again represented by Kenneth Rosellini. Debtor's principal argument on appeal appears to be that Judge Steckroth improperly found that Debtor's March 14 Petition was filed in bad faith, and that because the filing was made in good faith, an award of monetary sanctions was not appropriate, particularly in light of Debtor's limited funds. (*See* Debtor's Br. 2-3, ECF No. 5.) Debtor does not challenge that the Bankruptcy Court's authority to award monetary sanctions, nor does he challenge the manner in which Judge Steckroth determined the appropriate amount of sanctions to be $6,000.

## II. LEGAL ANALYSIS

This Court has jurisdiction to hear the Debtor's appeal pursuant to 28 U.S.C. § 158(a); *see also United States v. Pelullo*, 178 F.3d 196, 200 (3d Cir. 1999). On appeal, this Court reviews "the bankruptcy court's legal determinations *de novo*, its factual findings for clear error and its exercise of discretion for abuse thereof." *In re Trans World Airlines, Inc.*, 145 F.3d 124, 130–31 (3d Cir. 1998). In that regard, the decision to dismiss a bankruptcy case as a bad faith filing is reviewed for abuse of discretion. *In re Myers*, 491 F.3d 120, 125 (3d Cir. 2007). Similarly, a bankruptcy court's imposition of sanctions is reviewed for abuse of discretion. *Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc.*, 57 F.3d 1215, 1223 (3d Cir. 1995). An abuse of discretion occurs when the court's decision "rests upon a clearly erroneous finding of fact, an errant

6

conclusion of law or an improper application of law to fact." *Hanover Potato Products, Inc. v. Shalala*, 989 F.2d 123, 127 (3d Cir.1993).

### A. Dismissal of Debtor's Petition as a Bad Faith Filing

A Chapter 13 bankruptcy petition that is filed in bad faith may be dismissed "for cause" under 11 U.S.C. § 1307(c). *In re Lilley*, 91 F.3d 491, 496 (3d Cir.1996). In determining whether a bankruptcy filing was made in bad faith, the bankruptcy court looks to the totality of the circumstances, and may consider a wide range of factors, including, "the nature of the debt . . . ; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors." *In re Lilley* at 496. Importantly, the suspicious timing of a bankruptcy petition is an appropriate factor for a court to consider in this bad faith analysis. *See In re Tamecki*, 229 F.3d 205, 208 (3d Cir. 2000).

Based on the record before this Court in this appeal, and in the numerous other decisions resulting from the Mondelli Litigation, it is abundantly clear that it was not an abuse of discretion for the Bankruptcy Court to dismiss Debtor's March 14 Petition as a bad faith filing. First, Judge Steckroth correctly noted that the suspicious timing of the filing of a bankruptcy petition is a factor which is properly considered when determining whether a filing is made in bad faith. And that here, Debtor filed his petition on the morning of an already twice rescheduled Sheriff's sale of the Commercial Property. And further, that the March 14 Petition was filed a mere two weeks after Debtor's mother –

7

through a power of attorney executed to Debtor – filed an almost identical Chapter 13 bankruptcy petition on February 28, 2012, which Judge Steckroth also dismissed as a bad faith filing, and which caused a stay of the Sheriff's sale of the Commercial Property scheduled to occur on the following day, February 29, 2012.  In light of those facts, Judge Steckroth found that "[i]t couldn't be more obvious [that the] debtor's motive in filing the [March 14 Petition] was to stay the [Sheriff's] sale.  Again."  Moreover, Judge Steckroth noted that Debtor's questionable actions throughout the entirety of the Mondelli Litigation have adversely affected JSRM's rights in the Commercial Property since May 2007, to the point that Judge Steckroth felt compelled to characterize that behavior as "abusive of the [Bankruptcy] Code."  (Hr'g Tr. 36 Mar. 19, 2012.)

And on these glaring facts, the Bankruptcy Court did not abuse its discretion in dismissing Debtor's petition as a bad faith filing.  *See, e.g., In re Antonelli*, No. 11-20255-JHW, 2012 WL 280722 (Bankr. D.N.J. Jan. 30, 2012) (bankruptcy petition dismissed as a bad faith filing where petition was filed for no other purpose than to delay the eviction proceedings as evidenced by: the timing of the filing, which was obviously intended to delay eviction proceedings; that debtor's obligations to creditor were in default since April 2008; that a foreclosure complaint was filed in state court in August 2010; and that debtor's husband, represented by the same attorney, also filed a bankruptcy petition on the day that prior eviction proceedings were scheduled to be filed against the debtor and her family).

### B.  **The Bankruptcy Court's Sanctioning of Debtor**

Having determined that the Bankruptcy Court properly dismissed Debtor's March

8

14 Petition as a bad faith filing, this Court now considers whether the Bankruptcy Court abused its discretion in sanctioning Debtor $6,000.

Section 105(a) of the Bankruptcy Code Provides as follows:

"The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a). It is well established that under Section 105(a), a bankruptcy court has broad powers to prevent abusive use of the Bankruptcy Code and bankruptcy process. Accordingly, Section 105 grants statutory contempt powers to award monetary damages and other relief as "necessary and appropriate" to prevent such abuse. *Hardy v. United States*, 97 F.3d 1384, 1389–90 (11th Cir. 1996). This broad authority vests the Bankruptcy Court with the authority to sanction both attorneys and litigants. *In re Collins*, 250 B.R. 645, 657–59 (Bankr. N.D. Ill. 2000). Moreover, use of this authority is appropriate when a bankruptcy petition is filed simply to delay a creditor's state-court remedies. *In re Courtesy Inns, Ltd.*, 40 F.3d 1084, 1089–90 (10th Cir. 1994).

*See also Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991) (a federal court may use its "inherent power to impose attorney's fees as a sanction for bad-faith conduct")[6] *and In re Graffy*, 233 B.R. 894, 899 n. 9 (Bankr. M.D. Fla. 1999) ("in the presence of bad

---

[6] More precisely: "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons . . . . if a court finds that fraud has been practiced upon it, or that the very temple of justice has been defiled, it may assess attorney's fees against the responsible party. . . . The imposition of sanctions in this instance transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of vindicat[ing] judicial authority without resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy." *Chambers* at 45-46.

faith, Chapter 13 provides the court with several options to sanction a debtor [and] where the debtor's bad faith conduct rises to the level of a systematic abuse of process, as described in *Chambers*, the court, through its inherent power, may issue monetary sanctions."). *But see In re Clemente*, No. 10-5066 (JAP), 2011 WL 2039072, at *3 (D.N.J. May 23, 2011) ("the Third Circuit has not expressly addressed whether 11 U.S.C. § 105(a) is a codification of the inherent power of federal courts to sanction bad faith conduct as recognized by the United States Supreme Court in *Chambers*.").

Before a court may use its inherent powers to sanction a party or counsel, it must find that the party acted in bad faith. *Fellheimer, Eichen, & Braverman, P.C. v. Charter Tech., Inc.*, 57 F.3d 1215, 1224 (3d Cir.1995). As noted earlier, the record more than amply supports Judge Steckroth's determination that March 14 Petition was filed in bad faith. And because the finding of bad faith was not in error, the Bankruptcy Court had discretion to impose appropriate sanctions. *In re Amoroso*, 123 Fed.Appx. 43 (3d Cir. 2004). Here, the record shows Debtor's conduct throughout the Mondelli Litigation – and most pertinently, Debtor's actions occurring after the Foreclosure Judgment on the Commercial Property was entered in September 2011 – amounted to a pattern of repeated abuse of the bankruptcy process. And that in light of that abuse, JSRM and Ms. Greenberg requested that the Bankruptcy Court sanction Debtor pursuant to Section 109(a) for making yet another bad faith filing when Debtor filed the March 14 Petition. The record also supports Judge Steckroth's determination that as a result of Debtor's bad faith conduct in filing the March 14 Petition, both JSRM and Ms. Greenberg incurred additional costs. JSRM, in fact, requested a much higher sanction of $10,000 against

10

Debtor.  Tellingly, Debtor has failed to dispute that the $6,000 sanction was improperly calculated.

On these facts, it was not – to put it mildly – an abuse of discretion for the Bankruptcy Court to sanction Debtor[7] $6,000 for costs which JSRM and Ms. Greenberg incurred as a result of Debtor's bad faith filing of the March 14 Petition.  *In re Amoroso*, 123 Fed.Appx. 43 (2004) (affirming bankruptcy court's imposition of sanctions of $5,512.50 because that amount relieved the innocent party of the costs that specifically resulted from the sanctioned-party's bad-faith actions); *In re Copeland*, 268 B.R. 273, 278-79 (Bankr. D. Kan. 2001) (sanctioning debtors in the amount of $5,510.95 after determining that debtors' "multiple bankruptcy filings on the eve of foreclosure sales constitute[d] an abuse of the bankruptcy system warranting imposition of sanctions.").

This Court wants to additionally note that is not the first time Debtor's bad faith actions in the Mondelli Litigation have resulted in court-imposed monetary sanctions.  Sadly, it appears that neither Debtor nor Mr. Rosellini have learned from the prior admonishments.

### III.  CONCLUSION

For the reasons stated above, the Bankruptcy Court's March 20, 2012 Order is **AFFIRMED**.  An appropriate Order follows.

/s/William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: March 21, 2013.**

---

[7] The Court will not speculate on whether the Bankruptcy Court would have also entered sanctions against Mr. Rosellini had he been the attorney who filed the March 14 Petition on Debtor's behalf.

11